UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

                          :

UNITED STATES OF AMERICA         :

         -v.-                   :     **SEALED INDICTMENT**

CURTIS WILLIAM LEHNER,        :
   a/k/a "Santa,"                 :     21 Cr.
COURTNEY VASSEUR,             :
   a/k/a "Black Water Resource Management," :
   a/k/a "Black Water,"          :
   a/k/a "Cyrill Vetsch,"         :
   a/k/a "Arctic Shark,"          :
   a/k/a "Oscar Devries,"         :
HASAN SARIO,
   a/k/a "Ali,"                  :
   a/k/a "H," and              :
DOMENIC CALABRIGO,           :
   a/k/a "Raider,"             :

            Defendants.     :

                          :

- - - - - - - - - - - - - - - - - - - - - - - x

**21 CRIM 121**

## COUNT ONE
### (Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Relevant Persons and Entities

1.   At all times relevant to this Indictment, CURTIS WILLIAM LEHNER, a/k/a "Santa," the defendant, was a citizen of Canada who resided in British Columbia.  As is described herein, LEHNER orchestrated multiple "pump-and-dump" stock manipulation schemes.

2.   At all times relevant to this Indictment, COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black

Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," the defendant, was a citizen of Canada who resided in British Columbia.  As is described herein, VASSEUR orchestrated multiple "pump-and-dump" stock manipulation schemes.

3.   At all times relevant to this Indictment, HASAN SARIO, a/k/a "Ali," a/k/a "H," the defendant, was a citizen of Germany and Turkey who resided in Turkey.  As is described herein, SARIO orchestrated the "pump-and-dump" stock manipulation schemes by, among other things, acting as a designated "trading specialist" for the group of individuals engaged in the stock manipulation schemes described in this Indictment (the "Group").  SARIO directed the Group's stock trading across various nominee entity accounts the Group controlled in furtherance of the stock manipulation schemes.  SARIO also utilized a network of nominee entities and nominee entity bank accounts that SARIO controlled in order to both trade shares and transfer funds in furtherance of the stock manipulation schemes.

4.   At all times relevant to this Indictment, DOMENIC CALABRIGO, a/k/a "Raider," the defendant, was a citizen of Canada who resided in the Bahamas.  As is described herein, CALABRIGO orchestrated the "pump-and-dump" stock manipulation schemes by, among other things, coordinating promotional campaigns that caused exaggerated, misleading, and, at times,

false information about the issuer to be distributed to the investing public for the purpose of inflating the trading price and trading volume of the issuer's shares.

5.    At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-1"), was a citizen of the United Kingdom and Switzerland who resided in Switzerland.  CC-1 was a founder and co-principal of a firm based in Switzerland that purported to offer asset management and trustee services to its clients ("Swiss Firm-1").  CC-1 and Swiss Firm-1 participated in the "pump-and-dump" stock manipulation schemes by, among other things, executing trades at the Group's direction in accounts held by various nominee entities Swiss Firm-1 had established in furtherance of the stock manipulation schemes and then funneling the proceeds of these schemes to the Group.

6.    At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-2") was a citizen of Denmark who resided in Monaco.  CC-2 participated in the "pump-and-dump" stock manipulation schemes by, among other things, providing the Group with control of certain publicly traded shell entities that were thereafter used as vehicles for the "pump-and-dump" stock manipulation schemes.

7.    At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-3") was a

citizen of the United Kingdom who resided in France. CC-3 owned and operated a firm based in Switzerland that purported to offer asset management and trustee services to its clients ("Swiss Firm-2"). CC-3 and Swiss Firm-2 participated in the "pump-and-dump" stock manipulation schemes by, among other things, executing trades at the Group's direction in accounts held by various nominee entities Swiss Firm-2 had established in furtherance of the stock manipulation schemes and then funneling the proceeds of these schemes to the Group.

8.   At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-4") was a citizen of Canada and Croatia who resided in Canada. CC-4 controlled a network of nominee entities based in Asia (the "Asian Nominee Platform") that, among other things, executed trades at the Group's direction in furtherance of the stock manipulation schemes and then funneled the proceeds of these schemes to the Group.

9.   At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-5") was a citizen of Canada who resided in Canada. CC-5 participated in the stock manipulation schemes by, among other things, coordinating promotional campaigns that, at times, caused materially false and misleading information to be distributed to

the investing public for the purpose of inflating the trading price and trading volume of an issuer's shares.

<u>Relevant Publicly Traded Companies</u>

10.  At all times relevant to this Indictment, Company-1 was a publicly traded company incorporated in Nevada.  At certain times relevant to this Indictment, Company-1 purported to be based in Mexico and subsequently purported to be based in Nevada.  At certain times relevant to this Indictment, Company-1 was purportedly engaged in mining operations and, subsequently, following a corporate transaction with another entity, was purportedly engaged in developing a health and fitness application for mobile telephones.  At all times relevant to this Indictment, shares of Company-1 traded on the over-the-counter ("OTC") market in the United States.

11.  At all times relevant to this Indictment, Company-2 was a publicly traded company incorporated in Nevada.  At certain times relevant to this Indictment, Company-2 purported to have its principal offices in California and subsequently in Nevada.  At certain times relevant to this Indictment, Company-2 was purportedly engaged in mining operations.  At all times relevant to this Indictment, shares of Company-2 traded on the OTC market in the United States.

12.  At all times relevant to this Indictment, Company-3 was a publicly traded company incorporated in Nevada. At certain

times relevant to this Indictment, Company-3 purported to have its principal offices in Texas and purported to specialize in royalty financing for mining operations. At all times relevant to this Indictment, shares of Company-3 traded on the OTC market in the United States.

13. At all times relevant to this Indictment, Company-4 was a publicly traded company incorporated in Nevada. At certain times relevant to this Indictment, Company-4 purported to have its principal offices in Manhattan, New York, and purported to be engaged in the development of treatments for insomnia. At all times relevant to this Indictment, shares of Company-4 traded on the OTC market in the United States.

14. At all times relevant to this Indictment, Company-5 was a publicly traded company incorporated in Delaware. At certain times relevant to this Indictment, Company-5 purported to have its principal offices in Nevada and purported to be engaged in mineral exploration. At all times relevant to this Indictment, shares of Company-5 traded on the OTC market in the United States.

15. At all times relevant to this Indictment, Company-6 was a publicly traded company incorporated in Nevada. At certain times relevant to this Indictment, Company-6 purported to have its principal offices in Valencia, Spain, and purported to be engaged in developing medical diagnostic equipment. At

all times relevant to this Indictment, shares of Company-6 traded on the OTC market in the United States.

16.   At all times relevant to this Indictment, Company-7 was a publicly traded company incorporated in Nevada.   At certain times relevant to this Indictment, Company-7 purported to have its principal offices in Nevada and purported to be engaged in tribal gaming and lottery and the development of interactive technology-based products.   At all times relevant to this Indictment, shares of Company-7 traded on the OTC market in the United States.

17.   At all times relevant to this Indictment, Company-8 was a publicly traded company incorporated in Nevada.   At certain times relevant to this Indictment, Company-8 purported to have its principal offices in California and purported to be engaged in developing a drone based home security and surveillance system.   At all times relevant to this Indictment, shares of Company-8 traded on the OTC market in the United States.

18.   At all times relevant to this Indictment, Company-9 was a publicly traded company incorporated in Nevada.   At certain times relevant to this Indictment, Company-9 purported to have its principal offices in Manhattan, New York, and subsequently purported to have its principal offices in Denmark. At certain times relevant to this Indictment, Company-9

purported to be a biotech company engaged in the development of medical skin cream products. At all times relevant to this Indictment, shares of Company-9 traded on the OTC market in the United States.

## Overview of the Stock Manipulation Scheme

19. From at least in or about 2013, up to and including at least in or about December 2018, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, conspired to defraud the investing public by orchestrating and facilitating multiple "pump-and-dump" stock manipulation schemes.

20. To perpetrate these "pump-and-dump" stock manipulation schemes, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown (1) secretly amassed control of the vast majority of the stock of certain publicly traded companies; (2) then manipulated the price and trading volume for these stocks, causing the share price and trading volume to become artificially inflated; and

(3) finally, sold out of their secretly-amassed positions at these inflated values at the expense of the investing public. Through their pump-and-dump schemes, LEHNER, VASSEUR, SARIO, CALABRIGO and their co-conspirators generated at least approximately $35 million in proceeds from the sale of the shares they secretly controlled.

### The Defendants' Network of Nominee Entities

21.   CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, secretly amassed control of the vast majority and, at times, substantially all of the stock of certain publicly traded companies that were listed on the OTC market in the United States, including Company-1 through Company-9.

22.   CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, typically spread the blocks of shares the Group controlled among multiple nominee entities established at Swiss Firm-1, Swiss Firm-2, and the Asian Nominee Platform.

While these various nominee entities were nominally owned and controlled by various individuals (the "nominees"), in reality the defendants and their co-conspirators controlled the disposition of all of the shares these nominee entities held and, indeed, ultimately had trading authority over the shares held by these nominee entities through Swiss Firm-1, Swiss Firm-2, and the Asian Nominee Platform.

23.  Holding the shares through this network of nominee entities allowed CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, to conceal the fact that, in reality, they controlled the disposition of the vast majority of the shares of the company.

**The Defendants' Control of the Companies**

24.  The securities that CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, sought to manipulate were issued by small companies, were thinly traded, and

typically traded at less than $2 per share.  Thus, these securities were particularly susceptible to manipulation.

25.  CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, frequently installed management at the companies whose shares they sought to manipulate.  These publicly traded shell companies frequently had few, if any, actual assets or actual business operations.  While on paper the defendants and their-conspirators had no connection to these companies, in reality they exercised substantial control, which included financing the companies' operations and funding payments for attorneys in order to prepare public filings with OTC Markets Group, Inc. and the Securities and Exchange Commission (the "SEC") in order to ensure these companies' filings were updated prior to commencing the manipulation of these companies' shares.

26.  In order to attract investor interest, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a

"Raider," the defendants, at times caused private businesses to be merged or "vended" into the publicly traded shell companies. The private businesses were often in industries likely to attract the investing public's interest.

27.    In order to attract investor interest and persuade retail investors to purchase the stock of these companies, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, at times coordinated with the management of these companies such that they issued press releases and announcements in conjunction with the stock promotions being orchestrated by the defendants. Many of the press releases and other public announcements that the defendants caused these companies to issue contained false and misleading statements.  CC-2 and VASSEUR, at times, reviewed, edited, and approved of the content in these public announcements before they were issued by the companies.

### The Defendants' Manipulative Trading

28.    CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and

DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others
known and unknown, frequently engaged in manipulative trading
activity in order to artificially increase the trading volume
and share price of the stocks.  This manipulative trading was
conducted at the direction of the defendants and their co-
conspirators with the objective of creating a misleading
impression to the investing public of bona fide market activity
in order to induce the investing public to ultimately purchase
shares of these companies.

        29.   This manipulative trading activity included, at times,
coordinated "match" trades in which CURTIS WILLIAM LEHNER, a/k/a
"Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource
Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a
"Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali,"
a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the
defendants, and others known and unknown, caused one nominee
entity or other brokerage account subject to their control to
sell a certain quantity of shares while causing another nominee
entity or brokerage account subject to their control to buy a
similar quantity of shares that same day.  These match trades,
which often occurred on days when there was low trading volume
in these companies' shares, had the effect of increasing the
share price and trading volume of the stock and provided the
investing public with the false appearance there was actual,

legitimate market activity, when in reality the increase in the trading volume and share price was due to coordinated trades orchestrated by the Group. Certain of the trade orders in connection with the match trades were executed in Manhattan, New York.

30. In numerous instances, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, delegated trading authority to HASAN SARIO, a/k/a "Ali," a/k/a "H," the defendant, for the various nominee entity accounts controlled by the Group. On other occasions, either LEHNER, VASSEUR, CALABRIGO, or others known or unknown, provided trading instructions to Swiss Firm-1, Swiss Firm-2, or the Asian Nominee Platform with respect to the nominee entity accounts controlled by the Group.

31. CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, provided trade orders with respect to the nominee entities at Swiss Firm-1 to CC-1 or to other individuals

employed by Swiss Firm-1, which CC-1 or other individuals
employed by Swiss Firm-1 thereafter conveyed for execution to
the brokers for these nominee entities' brokerage accounts. The
Group provided trade orders with respect to the nominee entities
at Swiss Firm-2 to CC-3 or to other individuals employed by
Swiss Firm-2, which CC-3 or other individuals employed by Swiss
Firm-2 thereafter conveyed for execution to the brokers for
these nominee entities' brokerage accounts.

 32. With respect to the nominee entities at the Asian
Nominee Platform, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY
VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black
Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a
"Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and
DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others
known and unknown, did not communicate directly with CC-4 to
convey trade orders. Instead, the Group provided trade orders
with respect to these nominee entities to CC-1 or to other
individuals employed at Swiss Firm-1, which CC-1 or other
individuals employed by Swiss Firm-1 thereafter conveyed to CC-
4. CC-4 then conveyed for execution these trade orders to the
brokers for these nominee entities' brokerage accounts.

 33. While the stock promotion and "pump" were ongoing,
CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a
"Black Water Resource Management," a/k/a "Black Water," a/k/a

"Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries,"
HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO,
a/k/a "Raider," the defendants, and others known and unknown, at
times, caused the nominee entities they controlled to engage in
purchases of the stock and additional match trades between their
nominee entities in order to artificially support the share
price and artificially inflate the trading volume of the stock.
The ultimate objective of this trading activity was to induce
the investing public into purchasing shares of the company based
on the misleading impression these manipulative trading tactics
created.

### The Stock Promotion Campaigns

34.   As part of the "pump and dump" stock manipulation
schemes, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR,
a/k/a "Black Water Resource Management," a/k/a "Black Water,"
a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar
Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC
CALABRIGO, a/k/a "Raider," the defendants, and others known and
unknown, financed and coordinated promotional campaigns through
which promotional materials touting the stocks of the companies
were distributed to the investing public.  These stock
promotional materials frequently contained false and misleading
claims about the issuer with the objective of inducing retail
investors to purchase the shares of the issuer, thereby

permitting the defendants and their co-conspirators to sell off their substantial positions for a profit.

35. With respect to certain issuers, including Company-4, Company-6, Company-8, and Company-9, DOMENIC CALABRIGO, a/k/a "Raider," the defendant, was responsible for coordinating the stock promotion campaigns. With respect to certain issuers, including Company-2, Company-3, Company-4, Company-5, Company-7, and Company-8, CC-5 was responsible for coordinating the stock promotion campaigns. With respect to Company-4 and Company-8, the Group orchestrated multiple stock promotion campaigns, with CC-5 coordinating the initial stock promotion campaign and CALABRIGO coordinating a subsequent stock promotion campaign thereafter.

36. With respect to many of the companies, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, expended hundreds of thousands of dollars on the stock promotion campaigns. At times, the Group used the proceeds they had generated from the manipulation of one company's shares in order to finance the stock promotion of the next company whose shares they sought to manipulate. By way of example, the Group paid at

least in part for the stock promotion they financed for Company-
4 using proceeds they had previously generated in connection
with the stock manipulation schemes of Company-2 and Company-3.
The Group also frequently financed the ongoing stock promotion
of a particular company using proceeds they had recently
generated through their sale of large blocks of that company's
shares in connection with the scheme.

37.   In order to conceal the true funding source for the
stock promotions, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY
VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black
Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a
"Oscar Devries," and HASAN SARIO, a/k/a "Ali," a/k/a "H," the
defendants, and others known and unknown, frequently transferred
funds between multiple entities before the funds were ultimately
transferred to the company that was responsible for distribution
of the stock promotion materials to the investing public.

38.   In particular, CURTIS WILLIAM LEHNER, a/k/a "Santa,"
COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a
"Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark,"
a/k/a "Oscar Devries," and HASAN SARIO, a/k/a "Ali," a/k/a "H,"
the defendants, and others known and unknown, frequently caused
the nominee entities they controlled at either Swiss Firm-1,
Swiss Firm-2, or the Asian Nominee Platform, to send funds to a
Singaporean entity with a bank account based in Singapore

("Singapore Entity-1") that, while being nominally owned by a Singaporean national and, subsequently, a Malaysian national, was, in reality, controlled by SARIO. The Group frequently created phony invoices reflecting services that had not actually been rendered, or other phony contracts or agreements, in order to conceal the fact that these transfers from the nominee entities to Singapore Entity-1 were, in actuality, for the purpose of funding a stock manipulation scheme.

39. Typically, Singapore Entity-1 then transferred a substantial portion of the funds it had received from the nominee entities to another entity ("Intermediary Entity-1"). Intermediary Entity-1 then typically transferred the vast majority of the funds it had received from Singapore Entity-1 to the company actually responsible for the distribution of the stock promotional materials to the investing public and other services relating to the stock promotion campaigns.

40. In this manner, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," and HASAN SARIO, a/k/a "Ali," a/k/a "H," the defendants, and others known and unknown, sought to conceal the fact that the nominee entities subject to their control were the true funding source for the stock promotion campaigns.

### The "Dump" and Laundering of the Scheme Proceeds

41.  Having artificially inflated the share prices of the
relevant issuers' stock, CURTIS WILLIAM LEHNER, a/k/a "Santa,"
COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a
"Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark,"
a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and
DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others
known and unknown, profited from the scheme by selling the
shares they controlled into the market at these artificially
high prices.  By selling these shares while the trading price
was artificially inflated through their manipulative activity,
the Group reaped millions of dollars in illicit profits.  Once
the Group had sold off their shares and ceased the stock
promotion campaign and their manipulative trading tactics, the
share price typically quickly dropped precipitously.

42.  By manipulating the stock of Companies-1 through -9,
CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a
"Black Water Resource Management," a/k/a "Black Water," a/k/a
"Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries,"
HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO,
a/k/a "Raider," the defendants, and others known and unknown,
generated at least approximately $35 million in proceeds.  The
Group, however, manipulated the stock of additional issuers

beyond Companies-1 through -9 as part of the conspiracies charged herein.

43.  CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, frequently laundered the proceeds of their stock manipulation schemes with the assistance of, among other co-conspirators, CC-1 and Swiss Firm-1, CC-3 and Swiss Firm-2, and CC-4 and the Asian Nominee Platform.  The Group caused their share of these crime proceeds to be remitted to them in a manner designed to conceal the source of these funds or the identity of the recipients thereof, including through wire transfers that were executed through Manhattan, New York.  For instance, the Group used fabricated invoices and/or fabricated contracts and agreements to justify wire transfers from accounts held in the names of the nominee entities that had generated crime proceeds to other bank accounts controlled by the Group.

### Statutory Allegations

44.  From at least in or about 2013, up to and including in or about December 2018, in the Southern District of New York and elsewhere, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black

Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a
"Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and
DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others
known and unknown, willfully and knowingly combined, conspired,
confederated, and agreed together and with each other to commit
offenses against the United States, to wit, securities fraud, in
violation of Title 15, United States Code, Sections 78j(b) and
78ff, and Title 17, Code of Federal Regulations, Section
240.10b-5.

45.  It was a part and an object of the conspiracy that
CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a
"Black Water Resource Management," a/k/a "Black Water," a/k/a
"Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries,"
HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO,
a/k/a "Raider," the defendants, and others known and unknown,
willfully and knowingly, directly and indirectly, by use of the
means and instrumentalities of interstate commerce, the mails,
and the facilities of national securities exchanges, would and
did use and employ, in connection the purchase and sale of
securities, manipulative and deceptive devices and contrivances
in violation of Title 17, Code of Federal Regulations, Section
240.10b-5, by (a) employing devices, schemes, and artifices to
defraud; (b) making and causing to be made untrue statements of
material fact and omitting to state material facts necessary in

22

order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Overt Acts

46.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about March 3, 2016, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," and HASAN SARIO, a/k/a "Ali," a/k/a "H," the defendants, and others known and unknown, caused brokers to execute trades in Company-2's stock on behalf of nominee entities that they controlled.  Certain of these trade orders were executed in Manhattan, New York.

b.   On or about May 26, 2016, LEHNER, VASSEUR, and SARIO, and others known and unknown, caused brokers to execute trades in Company-3's stock on behalf of nominee entities that they controlled.  Certain of these trade orders were executed in Manhattan, New York.

c.   On or about November 15, 2016, LEHNER, VASSEUR, and SARIO, and others known and unknown, caused brokers to execute trades in Company-4's stock on behalf of nominee entities that they controlled.  Certain of these trade orders were executed in Manhattan, New York.

d.   On or about June 20, 2017, LEHNER, VASSEUR, SARIO, and DOMENIC CALABRIGO, a/k/a "Raider," the defendant, and others known and unknown, caused brokers to execute trades in Company-4's stock on behalf of nominee entities that they controlled.  Certain of these trade orders were executed in Manhattan, New York.

e.   On or about February 3, 2017, LEHNER, VASSEUR, and SARIO, and others known and unknown, caused brokers to execute trades in Company-5's stock on behalf of the nominee entities that they controlled.  Certain of these trade orders were executed in Manhattan, New York.

f.   In or about March 2017, LEHNER, VASSEUR, and CALABRIGO, and others known and unknown, caused brokers to execute trades in Company-6's stock on behalf of the nominee entities that they controlled.  Certain of these trade orders were executed in Manhattan, New York.

g.   On or about January 27, 2017, LEHNER, VASSEUR, and SARIO, and others known and unknown, caused brokers to execute trades in Company-7's stock on behalf of nominee

entities that they controlled.  Certain of these trade orders were executed in Manhattan, New York.

      h.    In or about October 2017, LEHNER, VASSEUR, SARIO, and CALABRIGO, and others known and unknown, caused brokers to execute trades in Company-8's stock on behalf of the nominee entities that they controlled.  Certain of these trade orders were executed in Manhattan, New York.

      i.    On or about July 28, 2017, LEHNER, VASSEUR, SARIO, and CALABRIGO, and others known and unknown, caused brokers to execute trades in Company-9's stock on behalf of nominee entities that they controlled.  Certain of these trade orders were executed in Manhattan, New York.

      j.    In or about April 2015, LEHNER caused Swiss Firm-1 to deliver certain physical share certificates of Company-1's stock to an attorney working at LEHNER's direction.

      k.    On or about October 23, 2017, CALABRIGO sent an email relating to the stock promotion of Company-9's stock.

      l.    On or about February 21, 2017, LEHNER, VASSEUR, and SARIO, and other known and unknown, caused $200,000 to be wired from a nominee entity account that had recently generated proceeds selling Company-4 stock at their direction to Singapore Entity-1, which wire passed through Manhattan, New York, in order to fund an ongoing stock promotion of Company-4's stock.

m.    On or about April 30, 2015, SARIO and others known and unknown caused $35,000 of proceeds of the scheme to manipulate Company-1's stock to be wired from Singapore Entity-1 to a bank account held in SARIO's name, which wire passed through Manhattan, New York.

(Title 18, United States Code, Section 371.)

### COUNT TWO
### (Conspiracy to Commit Wire Fraud])

The Grand Jury further charges:

47.   The allegations contained in paragraphs 1 through 43, and 46 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

48.   From at least in or about 2013, up to and including in or about December 2018, in the Southern District of New York, and elsewhere, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

49.   It was a part and an object of the conspiracy that
CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a
"Black Water Resource Management," a/k/a "Black Water," a/k/a
"Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries,"
HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO,
a/k/a "Raider," the defendants, and others known and unknown,
willfully and knowingly, having devised and intending to devise
a scheme and artifice to defraud, and for obtaining money and
property by means of false and fraudulent pretenses,
representations, and promises, would and did transmit and cause
to be transmitted by means of wire and radio communication in
interstate and foreign commerce, writings, signs, signals,
pictures, and sounds for the purpose of executing such scheme
and artifice, in violation of Title 18, United States Code,
Section 1343, to wit, LEHNER, VASSEUR, SARIO, CALABRIGO, and
others conspired to manipulate the share price and trading
volume of various publicly traded stocks, including the shares
of Company-1 through Company-9, and used the wires in connection
with said conspiracy, including wires that passed through the
Southern District of New York.

(Title 18, United States Code, Section 1349.)

**COUNTS THREE THROUGH TEN**
**(Securities Fraud)**

The Grand Jury further charges:

50.    The allegations contained in paragraphs 1 through 43,
and 46 are hereby repeated, re-alleged, and incorporated by
reference as if fully set forth herein.

51.    On or about the dates set forth below, in the Southern
District of New York and elsewhere, CURTIS WILLIAM LEHNER, a/k/a
"Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource
Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a
"Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali,"
a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the
defendants, willfully and knowingly, directly and indirectly, by
the use of means and instrumentalities of interstate commerce,
and the mails and facilities of national securities exchanges,
did use and employ, and cause to be used and employed, in
connection with the purchase and sale of securities,
manipulative and deceptive devices and contrivances in
contravention of Title 17, Code of Federal Regulations, Section
240.10b-5, by (a) employing devices, schemes, and artifices to
defraud; (b) making untrue statements of material fact and
omitting to state material facts necessary in order to make the
statements made, in light of the circumstances under which they
were made, not misleading; and (c) engaging in acts, practices

28

and courses of business which operated and would operate as a
fraud and deceit upon persons, and aided and abetted the same,
to wit, in or about the time periods set forth below, the
defendants set forth below participated in a scheme to
manipulate the share price and trading volume of the securities
of the following companies:

| COUNT | DEFENDANTS | COMPANY | TIME PERIOD |
|---|---|---|---|
| THREE | LEHNER, VASSEUR, and SARIO | Company-2 | 2015 to September 2016 |
| FOUR | LEHNER, VASSEUR, and SARIO | Company-3 | 2014 through August 2016 |
| FIVE | LEHNER, VASSEUR, SARIO, and CALABRIGO | Company-4 | 2013 to July 2017 |
| SIX | LEHNER, VASSEUR, and SARIO | Company-5 | 2016 to February 2017 |
| SEVEN | LEHNER, VASSEUR, and CALABRIGO | Company-6 | 2014 to April 2017 |
| EIGHT | LEHNER, VASSEUR, and SARIO | Company-7 | 2014 to April 2017 |
| NINE | LEHNER, VASSEUR, SARIO, and CALABRIGO | Company-8 | 2013 to April 2018 |
| TEN | LEHNER, VASSEUR, SARIO, and CALABRIGO | Company-9 | 2016 to December 2018 |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
and Title 18, United States Code, Section 2.)

**COUNT ELEVEN**
**(Wire Fraud)**

The Grand Jury further charges:

52.   The allegations contained in paragraphs 1 through 43, and 46 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

53.   From at least in or about 2013, up to and including at least in or about December 2018, in the Southern District of New York and elsewhere, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, LEHNER, VASSEUR, SARIO, CALABRIGO, and others engaged in a scheme to manipulate the share price and trading volume of the stock of Company-2 through Company-9, which scheme involved the use of wires,

including wires that passed through the Southern District of New York.

(Title 18, United States Code, Section 1343 and 2.)

## COUNT TWELVE
### (Conspiracy to Commit Concealment Money Laundering)

The Grand Jury further charges:

54. The allegations contained in paragraphs 1 through 43, and 46 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

55. From at least in or about 2013, up to and including at least in or about December 2018, in the Southern District of New York and elsewhere, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

56. It was a part and an object of the conspiracy that CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO,

a/k/a "Raider," the defendants, and others known and unknown, knowing that the property involved in certain financial transactions, to wit, wire transfers to bank accounts controlled by the scheme participants, represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), to wit, fraud in the sale of securities and wire fraud, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control or the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

57. As a result of committing one or more of the offenses alleged in Counts One through Eleven of this Indictment, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any and all

property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to, a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

58.   As a result of committing the offense alleged in Count Twelve of this Indictment, CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real and personal, involved in said offenses, or any property traceable to such property, including but not limited to a sum in United States currency representing the amount of property involved in said offenses.

### Substitute Assets Provision

59.   If any of the above-described forfeitable property, as a result of any act or omission of CURTIS WILLIAM LEHNER, a/k/a "Santa," COURTNEY VASSEUR, a/k/a "Black Water Resource Management," a/k/a "Black Water," a/k/a "Cyrill Vetsch," a/k/a "Arctic Shark," a/k/a "Oscar Devries," HASAN SARIO, a/k/a "Ali," a/k/a "H," and DOMENIC CALABRIGO, a/k/a "Raider," the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982; Title 21,
United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
AUDREY STRAUSS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

CURTIS WILLIAM LEHNER,
a/k/a "Santa,"
COURTNEY VASSEUR,
a/k/a "Black Water Resource Management,"
a/k/a "Black Water," a/k/a "Cyrill
Vetsch," a/k/a "Arctic Shark,"
a/k/a "Oscar Devries,"
HASAN SARIO,
a/k/a "Ali," a/k/a "H," and
DOMENIC CALABRIGO,
a/k/a "Raider,"

Defendants.

### SEALED INDICTMENT

21 Cr. ____

(15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. §
240.10b-5; 18 U.S.C. §§ 371, 1343, 1349,
1956(h) & 2.)

AUDREY STRAUSS
United States Attorney.

A TRUE BILL

FOREPERSON